STATE, Appellant, v. STATE BANK OF FLORENCE (Security National Bank of Watertown, Intervenor), Respondent.

(162 N. W. 382.)

(File No. 4009.    Opinion filed April 17, 1917.)

1.  **Penitentiary—Disposition of Binding Twine—Statutes—Repeal.**
    Laws 1909, Chap. 251, relating to and covering the entire mode of disposition of twine manufactured at the penitentiary plaint, as did Laws 1905, Chap. 172, Secs. 7-11, repeals said Sec. 11.

2.  **Same—Purchaser of Binding Twine Therefrom—Title to Twine, Between State and Vendee's Mortgagee—State as Lienor.**
    As nothing in Laws 1909, Chap. 251, reserves title to the twine whose disposition is therein provided for, or creates a lien in favor of the state for unpaid purchase price, while it

provides, in lieu of the contingent interest reserved in the state by Sec. 11, Laws 1905, Chap. 172, that in cases where binding twine is sold by state, and not paid for on delivery, the claim of the state for unpaid purchase money shall be a preferred claim over all others against such debtor, therefore, **held,** that a mortgage upon twine purchased from the penitentiary by vendee, before payment of purchase money, is valid against the state; that the policy of the law was not such as to render void a sale by the vendee.

Appeal from Circuit Court, Codington County.   Hon. CARL G. SHERWOOD, Judge.

Action by the State, against the State Bank of Florence, the Security National Bank of Watertown intervening and being made substitute defendant.   From a judgment for defendant, plaintiff appeals.   Affirmed.

*Clarence C. Caldwell,* Attorney General, and *Byron S. Payne,* Asistant Attorney General, for the State.

*Hanten & Hanten,* and *Perry F. Gault,* for Respondent.

(1.)   To point one of the opinion, Appellant cited:   Cooperative S. & L. Ass'n. v. Fawick et al. 11 S. D. 594; 36 Cyc. 1097, notes 45 and 46.

Respondent cited:   Laws 1909, Chap. 251, Sec. 7.

(2.)   To point two of the opinion, Appellant cited:   Laws 1905, Chap. 172, Sec. 11; Laws 1909, Chap. 251, Sec. 6; Civ. Code, Sec. 1271.

Respondent cited:   Civ. Code, Sec. 1315; Laws 1909, Chap. 251; Mpls. Thresh. Mach. Co. v. Roberty County, 34 S. D. 498.

SMITH, J.   On May 2, 1910, one Amidon entered into a contract with the warden of the state penitentiary for the purchase of binding twine manufactured at that institution.

By its recitals this contract refers to chapter 172, Session Laws of 1905, and chapter 251, Laws of 1909, regulating sales of binding twine so manufactured, and to statutory provisions governing such sales.   The twine was purchased in the summer of 1910, and on October 25, 1910, Amidon executed to the warden a note for $950, payable October 1, 1911, covering the purchase price.   On January 4, 1912, Amidon paid $150 on this note, and further payment was extended to October 1, 1912.   On March 29, 1912, Amidon executed to the Security National Bank of Watertown, respondent here, his promissory note for $1,250 due

four months after date, for money borrowed from the bank. To secure this note he executed to the bank a chattel mortgage, in the usual form, covering the twine in Amidon's possession and other property, which was duly filed and entered in the office of the register of deeds of Codington county on March 30, 1912. At the-time the money was loaned and the note and mortgage executed by Amidon to the bank the bank had no knowledge or notice that the twine had been manufactured at the penitentiary twine factory, nor that the state had or claimed any interest in the twine. Amidon made default in the terms and conditions of the mortgage, and the bank took possession of the twine with the other mortgaged property, and had such possession at the commencement of this action.

This controversy arises between the state and the mortgagee in possession. The state bases its claim to the twine upon the **provisions of two acts**, chapter 172, Laws of 1905, and chapter 251, Laws of 1909. Whether the acts referred to reserve to the state an interest in the twine superior to the lien of the chattel mortgage is the question presented upon this appeal. No issue arose as to the validity, execution, or filing of the chattel mortgage, nor as to the good faith of the bank in loaning the money. The claim of the state is based wholly upon section 11, c. 172, Laws of 1905, which provides:

"The state shall have a contingent interest in the twine so disposed of in bulk until the same is resold as herein provided, and the title to such twine so purchased from the state shall become complete and the purchaser be relieved from further accountability under this act only when he has fully complied with the said contract as to the manner and terms of such resale, etc."

[1, 2] Respondent contends, and we think correctly, that chapter 251, Laws of 1909, repeals section 11, c. 172, Laws of 1905. Appellant contends that the provisions of section 11 of the act of 1905 are not inconsistent with and are not repealed by the act of 1909. The act of 1909 relates to and covers the entire mode of disposition of twine manufactured at the penitentiary plant, as did sections 7, 8, 9, 10, and 11 of the act of 1905, and in lieu of the contingent interest purporting to be reserved in the state by section 11, supra, provides that:

"In cases where binding twine is sold by the state and not paid for on delivery the claim of the state for such unpaid purchase money shall be a preferred claim over all others against such debtor." Section 6.

There is nothing in the act of 1909 which reserves title to the twine or creates a lien in favor of the state for the unpaid purchase price. The policy of the state in dealing with such sales is embodied in the act itself, and while its policy is to sell only to residents of the state, it declares that after June 15th of any current year the warden and board may sell twine remaining on hand to anybody at the best price obtainable. We think it may fairly be inferred that the policy of the law was not such as to render void a sale by the dealer after he had held the twine through two seasons, especially in view of the statute which gives the state a "preferred claim over all others" for the purchase price.

The judgment and order of the trial court are affirmed.